IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TRISHA F.,[1]                                                      Case No. 6:23-cv-00433-SB

                      Plaintiff,                              **OPINION AND ORDER**

        v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                  Defendant.

**BECKERMAN, U.S. Magistrate Judge.**

      Trisha F. ("Plaintiff") brings this appeal challenging the Commissioner of Social

Security's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act. The Court has jurisdiction over this appeal pursuant to

42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a magistrate judge

pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court reverses the

Commissioner's decision and remands for the calculation and payment of benefits.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

## I.    PLAINTIFF'S APPLICATION

Plaintiff was forty years old on April 1, 2020, her alleged disability onset date. (Tr. 140.) Plaintiff has a high school education and past work experience as "a resident care aide, merchandiser sales route driver, dining room attendant, server, and food-service manager." (Tr. 140, 218.) In her application, Plaintiff alleged disability due to Bechet's disease, fibromyalgia,

vasculitis, retinal vasculitis, spinal stenosis, arthritis, right knee tendonitis, osteophytes in both knees, neuropathy, visual impairment, and abdominal adhesions. (*Id.* at 218.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on October 15, 2021, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 231, 240, 259-260.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing before an ALJ on February 4, 2022. (*Id.* at 168-216.) On March 18, 2022, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 128-146.) On January 25, 2023, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-7.) Plaintiff now seeks judicial review of that decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

///

PAGE 3 – OPINION AND ORDER

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id*. at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 133-42.) At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since April 1, 2020, the alleged onset date. (*Id.* at 133.) At step two, the ALJ found that Plaintiff suffers from the following severe, medically determinable impairments: depression, anxiety, fibromyalgia, spondylosis, right knee patellar tendonitis, right knee osteoarthritis, and inflammatory polyarthropathy. (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 134.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, subject to these limitations: (1) unable to climb ladders, stairs, ramps, ropes, or scaffolds, (2) can never kneel, crouch, or crawl, (3) can never be exposed to hazards such as machinery and unprotected heights, (4) can frequently stoop and has no limitations in balancing, and (5) is limited to carrying out and maintaining attention for short and simple tasks,

consistent with a reasoning level of two and unskilled work as defined by the Dictionary of Occupational Titles, and she is unable to perform detailed or complex tasks. (*Id.* at 136.)

At step four, the ALJ found that Plaintiff could not perform her past work as a resident care aide, merchandiser sales route driver, dining room attendant, server, or food-service manager. (*Id.* at 140.) At step five, the ALJ found that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, such as a table worker, addresser, and wafer breaker. (*Id.* at 141.)

## DISCUSSION

Plaintiff argues that the ALJ failed to provide specific, clear, and convincing reasons supported by substantial evidence for discounting her symptom testimony, improperly discounted the medical opinion of Plaintiff's nurse practitioner, Leann Willis ("Willis"), and improperly disregarded Plaintiff's father's lay witness testimony. (Pl.'s Opening Br. ("Pl.'s Br.") at 5-21, ECF No. 12).) As explained below, the Court agrees, and therefore reverses the Commissioner's decision because it is based on harmful legal error.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the

claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

### B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 137, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ did not meet that standard here.

### 1.    Plaintiff's Testimony

At the hearing, Plaintiff testified that she is unable to work due to "extreme" pain in her body, knees, and abdomen. (Tr. 190.) Plaintiff stated she also suffers from blurred vision, back pain, hand cramps, and fibromyalgia. (*Id.* at 191-93.) Plaintiff testified that her symptoms vary daily, and she experiences up to three "bad days" in a week, as well as "flares" that "can last anywhere from two days, typically, to three weeks[.]" (*Id.* at 201.) She testified that she cannot lift more than ten pounds, walk more than fifteen minutes, or bend at the waist or knees. (*Id.* at 194-95.) She stated that her medications make her feel groggy and cause urinary incontinence. (*Id.* at 192.)

In her function report, Plaintiff indicated that she cares for her therapy dog, cooks simple meals, and does small loads of laundry and other household chores. (*Id.* at 364-65.) At the hearing, Plaintiff explained that she reclines in a recliner six hours per day and that because she

cannot stand for very long, she "tr[ies] to get just a few things done within that small amount of time [she] ha[s] before [she] starts hurting and then [has] to sit back down." (*Id.* at 196, 204-05.)

### 2.    The ALJ's Findings

The ALJ discounted Plaintiff's testimony about the intensity, persistence, and limiting effect of her symptoms based on Plaintiff's activities of daily living and inconsistencies with the objective medical record.[2] (*Id.* at 136-38.)

The ALJ cited medical reports that "often reflected [Plaintiff] had a moderate activity level lifestyle and that [Plaintiff] exercised three to four times per week, for five to ten hours a week." (*Id.* at 137-38, citing Exs. 8F-89, 94, 13F-3, 16, 27, 40, 47, 53, i.e., Tr. 662, 667, 738, 751, 764, 775, 788, 801.) The ALJ also discussed Plaintiff's reported activities, including her ability to perform household chores, care for her therapy dog and family, cook simple meals, do small loads of laundry, and drive. (*Id.* at 136.)

The ALJ further explained that "the medical evidence established that [Plaintiff] was able to function even with her impairments." (*Id.* at 137.) To support this assertion, the ALJ summarized imaging and other diagnostic records that showed "normal" and "unremarkable" examination findings. (*Id.* at 137-38.)

### 3.    Activities of Daily Living

Plaintiff argues that the ALJ appears to have relied on Plaintiff's daily activities to discount her symptom testimony without articulating her activities as a "clear reason to support

---

[2] The Commissioner asserts that the ALJ discounted Plaintiff's subjective symptom testimony because her pain improved with treatment. (Def.'s Br. at 8, ECF No. 14.) As the Court explains below, the ALJ discussed Plaintiff's alleged improvement with treatment when discounting Willis' medical opinion, but did not cite Plaintiff's improvement with treatment as a reason to discount her subjective symptom testimony.

his decision" and that the activities the ALJ identified are not inconsistent with Plaintiff's pain-related impairments. (Pl.'s Br. at 9-12.)

### a.    Applicable Law

An ALJ may discount a claimant's symptom testimony based on activities that are incompatible with the claimant's testimony regarding the severity of her symptoms. *See Burrell v. Colin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) (explaining that "[i]nconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination" (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997))); *Garrison*, 759 F.3d at 1016 (stating that a claimant's activities have "bearing on [the claimant's] credibility" if the reported "level of activity" is "inconsistent with [the claimant's] claimed limitations" (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998))). Notably, however, there must be a meaningful inconsistency between the claimant's daily activities and the symptom testimony. *See Harris v. Kijakazi*, No. 21-35136, 2022 WL 1262011, at *1 (9th Cir. Apr. 28, 2022) (holding that the ALJ committed harmful error in discounting the plaintiff's symptom testimony and explaining that the plaintiff's "limited daily activities were not meaningfully inconsistent with her symptom testimony" (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))).

### b.    Disposition

The Court finds that substantial evidence does not support the ALJ's conclusion that Plaintiff's level of activity is inconsistent with her claimed limitations. *See Garrison*, 759 F.3d at 1016 ("Recognizing that 'disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations,' we have held that '[o]nly if [the claimant's] level

of activity [is] inconsistent with [the claimant's] claimed limitations would these activities have

any bearing on [her] credibility.'") (citation omitted).

First, when summarizing medical treatment notes from Coquille Indian Health, the ALJ

stated that Plaintiff "engaged in moderate-level activity, which included exercising three to four

times per week, for five to ten hours a week." (Tr. 137-38, citing Exs. 8F-89, 94, i.e., Tr. 662,

667.) Plaintiff asserts that the ALJ relied on treatment notes in which the "lifestyle" sections are

essentially "clones" of a 2017 treatment note pre-dating the relevant period. (Pl.'s Br. at 11,

citing Tr. 597, 610.) Plaintiff explains that this repetition of the "lifestyle" section of the

treatment note "stands in stark contrast to the narrative portions of her treatment records." (*Id.*)

For example, Plaintiff presented with back pain rated at a severity level of ten and described her

pain as persistent, discomforting, throbbing, stabbing, and piercing. (Tr. 660, *see also* Tr. 137

citing Tr. 662.) In light of the evidence that the lifestyle section of the treatment notes on which

the ALJ relied was not updated, the medical record's reference to Plaintiff's frequent and

moderate exercise did not accurately reflect her condition during the relevant time period and

therefore was not a clear and convincing reason to discount her symptom testimony.[3]

Second, the Court finds that the ALJ's reliance on Plaintiff's daily activities—e.g., her

ability to perform household chores, care for her therapy dog and family, cook simple meals, do

---

[3] Further, to the extent Plaintiff reported that she walked for exercise, the record reflects that her treatment providers encouraged her to continue aerobic exercise as tolerated. (*See* Pl.'s Br. at 12, citing Tr. 920-21, *see also* Tr. 629, Plaintiff's assessment plan for fibromyalgia included exercising regularly.) The Ninth Circuit has held that "activities such as walking . . . and swimming are not necessarily transferable to the work setting with regard to the impact of pain." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Indeed, "[a] patient may do these activities despite pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved." *Id.*

PAGE 9 – OPINION AND ORDER

small loads of laundry, and drive (*id.* at 136)—was misplaced because the ALJ did not explain how these activities conflict with Plaintiff's reported symptoms. *See Garza v. Colvin*, No. 14-04425, 2015 WL 1285307, at *10 (C.D. Cal. Mar. 20, 2015) (holding that the ALJ's reliance on the claimant's daily activities was misplaced because the ALJ "listed a few daily activities . . . [but] failed to elaborate at all on how these activities actually conflict with [the claimant's] subjective symptom testimony"); *Vertigan*, 260 F.3d at 1049-50 ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (citation omitted).

For these reasons, the Court finds that the ALJ erred by discounting Plaintiff's symptom testimony as inconsistent with her activities of daily living.

### 4.    Inconsistency with Objective Medical Evidence

Plaintiff argues that the ALJ also failed to provide clear and convincing reasons supported by substantial evidence for discounting her testimony based on conflicting objective medical evidence. (Pl.'s Br. at 12-14.)

### a.    Applicable Law

"[T]he ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason[.]" *Valdez v. Berryhill*, 746 F. App'x 676, 677 (9th Cir. 2018) (citing *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005)); *see also McClaren v. Saul*, 812 F. App'x 500, 501 (9th Cir. 2020) (noting that "inconsistencies with objective medical evidence . . . cannot provide the sole basis for an ALJ's credibility determination") (citations omitted); *Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (explaining that even "[a]ssuming that [the claimant's] testimony regarding her physical

impairments was not supported by the objective medical evidence, the ALJ cannot properly rely on that as the sole reason to discredit her testimony" (citing *Burch*, 400 F.3d at 681)).

### b.    Disposition

Having found that the ALJ erred by discounting Plaintiff's symptom testimony based on her daily activities, the ALJ may not rely on a lack of objective medical evidence as the only reason to discount her testimony. *See Valdez*, 746 F. App'x at 677 ("[T]he ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason[.]" (citing *Burch*, 400 F.3d at 680)); *see also McClaren*, 812 F. App'x at 501; *Taylor*, 720 F. App'x at 907.

In any event, the ALJ summarized Plaintiff's medical records but never explained how those records undermined Plaintiff's testimony. (Tr. 137-38.) It is well settled than an ALJ must "specifically identify the testimony from a claimant [the ALJ] finds not to be credible and . . . explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (simplified); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) (noting that the ALJ must "specify which testimony [the ALJ] finds not credible"). This specificity requirement is not satisfied where the ALJ does not connect the medical evidence to any particular symptom testimony. *See id.* at 494 ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error."). As a result, the ALJ erred here by failing to "identify the testimony [he] found not credible" and then "link that testimony to the particular parts of the record supporting [his] non-credibility determination." *Id.*

Even if the ALJ had satisfied the specificity requirement, the ALJ's reasons for discounting Plaintiff's testimony were not supported by clear and convincing evidence in light of

Plaintiff's fibromyalgia. The ALJ relied on a December 2021 x-ray revealing "intact motor strength and intact hand coordination," "full ranges of extremity motions, full strength, intact sensations, and normal symmetrical reflexes," and "[n]o signs of extremity clubbing, cyanosis, or edema." (Tr. 138, citing Exs. 12F-10-12, i.e., Tr. 736-38.) However, Plaintiff alleges disability due in large part to fibromyalgia. (*See id.* at 133, listing fibromyalgia as one of Plaintiff's severe impairments; *see also id.* at 742, 746, a complete soft tissue exam and all fibromyalgia tender points were positive). The objective medical evidence on which the ALJ relied is not inconsistent with debilitating fibromyalgia.[4] *See Revels v. Berryhill*, 874 F.3d 648, 666 (9th Cir. 2017) (stating that normal imaging results and unremarkable physical examinations are "perfectly consistent with debilitating fibromyalgia," and noting that fibromyalgia is "diagnosed 'entirely on the basis of patients' reports of pain and other symptoms,' and 'there are no laboratory tests to confirm the diagnosis'") (citation omitted); *Nunn v. Berryhill*, No. 17-cv-00203-SB, 2018 WL 2244705, at *12 (D. Or. May 16, 2018) (explaining that fibromyalgia can be "confirmed as a severe impairment without objective testing" and that "persons suffering from fibromyalgia 'manifest normal muscle strength and neurological reactions and have a full range of motion'") (citation omitted). As a result, the ALJ erred in discounting Plaintiff's testimony on this ground. *See Nunn*, 2018 WL 2244705, at *12 (explaining that an ALJ commits reversible error by failing to construe the medical evidence "in light of fibromyalgia's unique symptoms and diagnostic methods" and by failing to consider symptom testimony in light of such a diagnosis (quoting *Revels*, 874 F.3d at 662-66)); *Rita L.S. v. Comm'r Soc. Sec.*, No. 16-cv-01981-MC, 2018 WL 4361039, at *5-6 (D. Or. Sept. 13, 2018) (noting that the ALJ

---

[4] The only other treatment note the ALJ cited was a visit at which Plaintiff complained of facial pain, which is not one of Plaintiff's disabling impairments. (Tr. 667.)

discounted the claimant's testimony based on conflicting objective medical evidence, including unremarkable examination results, and that courts in this district "have been especially reluctant to rely on a lack of objective medical evidence when considering fibromyalgia cases," and therefore rejecting the ALJ's reliance on conflicting objective medical evidence).

For all of these reasons, the Court finds that the ALJ erred in discounting Plaintiff's subjective symptom testimony.

## II.    MEDICAL OPINION EVIDENCE

Plaintiff also argues that substantial evidence does not support the ALJ's explanation for discounting the opinion of Plaintiff's nurse practitioner, Willis. (Pl.'s Br. at 15.) The Court agrees.

### A.    Applicable Law

As the parties acknowledge (*see* Pl.'s Br. at 15; Def.'s Br. at 9), the new regulations apply here because Plaintiff filed her application after March 27, 2017.[5] *See Woods v. Kijakazi*, 32 F.4th 785, 787-92 (9th Cir. 2022) (observing that "[t]he new regulations apply to [a claimant's Social Security case if] she filed her claim on or after March 27, 2017," and that the new regulations displace the "irreconcilable" and "incompatible" specific and legitimate reasons standard); *see also Petritz v. Kijakazi*, No. 22-35155, 2022 WL 17592191, at *1 (9th Cir. 2022) (explaining that "the standard under the new regulations . . . [did] not apply to [the claimant's] case because [he] filed his application for benefits before [March 27,] 2017" (citing *Woods*, 32 F.4th at 789)).

---

[5] The Ninth Circuit recently held that the new regulations are valid under the Social Security Act and Administrative Procedures Act. *See Cross v. O'Malley*, 89 F.4th 1211, 1215-17 (9th Cir. 2024).

Under the new regulations, "'[t]he most important factors' that [an ALJ] considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(a)). Supportability refers to "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence,'" *id.* at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)), and consistency refers to "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). An ALJ "must 'articulate . . . how persuasive' [he] finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [he] considered the supportability and consistency factors' in reaching [his] findings.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(b), 404.1520c(b)(2)).

The new regulations reflect that an ALJ is not required to make specific findings regarding a medical source's relationship with the claimant, i.e., "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's record." *Id.* (quoting 20 C.F.R. §§ 404.1520c(b)(2), 404.1520c(c)(3)(i)-(v)). Nor is an ALJ required to make findings regarding specialization or "other factors that tend to support or contradict a medical opinion[, such as the medical source's] familiarity with the other evidence in the claim or . . . understanding of . . . disability program[] policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(b)(2), 404.1520c(c)(4)-(5).

If, however, an ALJ finds that medical opinions "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ] will articulate how [he] considered the . . . factors in paragraphs (c)(3) through (c)(5)." *Id.*

§ 404.1520c(b)(3). Those factors are the medical source's relationship with the claimant, specialization, and facts that tend to support or contradict a medical source's opinion. *Id.* § 404.1520c(c)(3)-(5).

A district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See Woods*, 32 F.4th at 787 ("Now, [under the new regulations,] an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)).

### B.    Analysis

The Court concludes that substantial evidence does not support the ALJ's evaluation of Willis' opinion.

### 1.    Willis' Opinion

Willis treated Plaintiff for her conditions beginning on July 7, 2014. (*See* Tr. 483.) In July 2019, prior to the relevant period of disability, Willis completed a Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act). (*Id.* at 482.) Willis reported that Plaintiff was unable to stand or walk during flares, and that she had chronic muscle and joint pain that was exacerbated by working longer hours. (*Id.* at 483.) Willis opined that from July 2019 to July 2020, Plaintiff could work a maximum of nine and a half hours a day, for four days a week. (*Id.* at 484.) However, Willis indicated that it was medically necessary for

Plaintiff to be absent from work due to her flare-ups and that the frequency of her flare-ups at that time was one or two per month lasting for a half or full day per episode. (*Id.*)

In October 2020, Willis provided an updated opinion regarding the severity and limiting effects of Plaintiff's impairments. (*Id.* at 909.) Willis explained that Plaintiff was more limited due to her impairments, and opined that Plaintiff (1) can sit for about an hour before she has to move again, (2) can walk for around an hour before needing to rest, (3) can engage in activity up to four hours per day with breaks, (4) has vision changes that prevent her from having clear vision at dusk, after dark, or when it is raining, (5) can work on a computer for only about two hours at a time before requiring rest but then is unable to use the computer until the following day, (6) would be absent more than four workdays per month, and (7) would need to lie down for several hours during the day because of her fatigue and increased pain. (*Id.* at 910-12.)

### 2.    The ALJ's Findings

The ALJ found Willis' opinion unpersuasive. (*Id.* at 139.) The ALJ explained that Willis' opinion was "not supported by the medical reports from Coquille Indian Health, dated between June of 2016 and August 2021, which indicated [Plaintiff's] pain management was working fairly well, and that [Plaintiff] continued to obtain pain relief from opiate analgesics, with no side effects . . . [and that Plaintiff] also had a normal gait." (*Id.* at 139, citing Exs. 8F-5, 84, 87, i.e., Tr. 578, 657, 660.) The ALJ further explained that "in June and October 2020, it was noted [Plaintiff] engage[d] in moderate-level activity, which included exercising three to four times per week, for five to ten hours a week." (*Id.* at 139, citing Exs. 8F-89, 94, i.e., Tr. 662, 667.)

### 3.    Disposition

The Court concludes that the ALJ committed harmful error in discounting Willis' opinion.

Plaintiff first argues that the ALJ's discussion of Plaintiff's pain relief from opiate analgesics "lacks relevance" because the record he cited is from June 2016, four years prior to the relevant period. (Pl.'s Br. at 17, citing Tr. 578.) Plaintiff also asserts that the ALJ relied on a chart note evaluating acute symptoms of left jaw pain, swelling, and headache, which also lacks relevance given that these are not the impairments limiting Plaintiff's ability to work. (*Id.*, citing Tr. 653, 657.) The Court agrees that neither reason for discounting Willis' opinion was relevant.

Plaintiff also argues that the remaining citation on which the ALJ relied is a single chart note from June 2020 indicating that Plaintiff had improved functioning with pain medication, however, she still experienced back pain at a severity level of ten, which was aggravated by "ascending stairs, bending, changing positions, bending, performing daily activities, . . . standing, . . . and walking." (*Id.*, citing Tr. 665.) Plaintiff asserts that this same treatment note reflected that Plaintiff was experiencing "aching, burning, dull piercing, sharp, and throbbing" pain in her "bilateral shoulders, elbows, hips, knees, and ankles." (*Id.*) The Court agrees that, considering the record as a whole, this isolated chart note does not constitute substantial evidence to discount Willis' opinion. *See Robbins,* 466 F.3d at 882 (holding that a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence" (quoting *Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir. 1989))); *see also Adeena W. v. Saul*, No. 6:19-cv-00051-SB, 2020 WL 2992191, at *5 (D. Or. June 4, 2020) (explaining that an ALJ cannot "cherry-pick" from the record to support their findings while ignoring evidence that contradicts those findings).

The ALJ's only other reason to discount Willis' opinion was that Plaintiff "engage[d] in moderate-level activity, which included exercising three to four times per week, for five to ten hours a week." (Tr. 139.) As discussed above, the medical records on which the ALJ relied were

not updated and did not reflect Plaintiff's condition during the relevant period. As such, Plaintiff's reported exercise routine from prior years was not a valid reason to discount Willis' opinion.

For these reasons, the Court finds that the ALJ's reasons for discounting Willis' opinion were not supported by substantial evidence.

## III.    LAY WITNESS TESTIMONY

Finally, Plaintiff argues that the ALJ erred by failing to address her father's lay witness testimony. (Pl.'s Br. at 20-21.) The Commissioner argues that because the ALJ properly considered Plaintiff's subjective symptom testimony, which was similar to the lay witness testimony, and the ALJ properly discounted Plaintiff's subjective testimony, any error in failing to give germane reasons for rejecting the lay witness testimony was harmless. (Def.'s Br. at 11-12.)

### A.    Applicable Law

The new regulations "provid[e] that an ALJ is 'not required to *articulate* how [he] considered evidence from nonmedical sources[.]'" *Stephens v. Kijakazi*, No. 22-35998, 2023 WL 6937296, at *2 (9th Cir. Oct. 20, 2023) (emphasis added) (quoting 20 C.F.R. §§ 404.1520c(d), 416.920c(d)). The Ninth Circuit recently recognized that it has "not yet addressed whether an ALJ is required to provide germane reasons for discounting lay witnesses under the new regulations." *Wilson v. O'Malley*, No. 23-35463, 2024 WL 2103268, at *2 (9th Cir. May 10, 2024) (stating as much and finding it unnecessary to decide the issue because "any error would be harmless").

In at least two unpublished opinions, the Ninth Circuit has appeared to endorse the position that an ALJ is no longer required to address lay testimony. In *Kennedy v. O'Malley*, No.

PAGE 18 – OPINION AND ORDER

22-35866, 2024 WL 242992, at *1-2 (9th Cir. Jan. 23, 2024), for example, the claimant argued that the ALJ improperly discounted lay witness testimony (i.e., of a Social Security Administration field office employee who conducted an in-person interview of the claimant). *Id.*; *see also David I. K. v. Comm'r Soc. of Soc. Sec.*, No. 3:21-cv-05904, 2022 WL 4008216, at *4 (W.D. Wash. Sept. 2, 2022) (describing the statement and additional factual circumstances). In affirming the district court's decision, the Ninth Circuit stated that "[t]he ALJ did not articulate how he evaluated the statement of a Social Security Administration employee[;] [h]owever, an ALJ is 'not required to articulate how [she] considered evidence from nonmedical sources' under the new regulations." *Kennedy*, 2024 WL 242992, at *2 (quoting 20 C.F.R. §§ 404.1520c(d), 416.920c(d)). Immediately thereafter, the Ninth Circuit stated that "even assuming [the ALJ did err], any error was harmless . . . [, as] [n]othing in the statement about the employee's interaction with [the claimant] would alter any of the ALJ's conclusions based upon objective medical evidence." *Id.*

About one year earlier, the Ninth Circuit stated (albeit in a footnote of an unpublished opinion) that the new regulations make it clear that ALJs are no longer required to articulate in their decisions how they considered evidence from lay witnesses. *See Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *1 n.1 (9th Cir. Dec. 27, 2022) ("It is an open question whether ALJs are still required to consider lay witness evidence under the revised regulations, although it is clear they are no longer required to articulate it in their decisions." (citing *Johnson v. Kijakazi*, No. 21-35755, 2022 WL 3998572, at *2 (9th Cir. Sept. 1, 2022))); *see also Johnson*, 2022 WL 3998572, at *2 (finding it unnecessary to address the Commissioner's argument that "under the new, 2017 regulations, the ALJ does not need to discuss 'non-medical sources' in [his] decision").

Like *Kennedy*, some district courts in this circuit have "concluded that the new

regulations may dispense with an ALJ's obligation specifically to address lay witness testimony,

including any obligation to articulate germane reasons for disregarding lay testimony." *Tracy Q.*

*v. Kijakazi*, No. 6:22-cv-00692-SI, 2024 WL 706963, at *7 (D. Or. Feb. 21, 2024) (citing *Evans*

*v. Comm'r of Soc. Sec.*, No. 2:22-cv-00435, 2023 WL 3570083, at *9 (E.D. Cal. May 19, 2023));

*see also Evans*, 2023 WL 3570083, at *9 ("[T]he new regulations only require consideration of

these statements, not articulation. . . . Portions of [the caregiver's] statement are discussed

throughout the decision, such that the undersigned is satisfied the ALJ met his duty to consider

this evidence." (citing 20 C.F.R. § 404.1520c(d))). Although some district courts have held

otherwise, the "majority of district courts in this circuit," including this Court, have "conclude[d]

that the new regulations have not eliminated an ALJ's obligation to consider and address lay

witness testimony." *Tracy Q.*, 2024 WL 706963, at *7 (citing, *inter alia*, *Christopher M. v.*

*Comm'r, Soc. Sec. Admin.*, No. 6:22-cv-01378-SB, 2023 WL 8827678, at *10 (D. Or. Dec. 21,

2023) and *Joseph L. S. v. Kijakazi*, No. 5:23-cv-00006, 2023 WL 5611408, at *5 (C.D. Cal. Aug.

30, 2023)).

In reaching the same conclusion, the district court in *Tracy Q.* explained that the new

regulations are not "clearly irreconcilable" with existing caselaw and insufficient to overrule

binding circuit precedent:

> On the Court's reading, the new regulations do not eliminate an ALJ's
> obligation to consider and address lay witness testimony. The revised regulations
> describe how to evaluate *medical* opinion testimony. The fact that the regulations
> state that nonmedical opinion testimony is *not held* to the same standard as
> medical opinion testimony says nothing about the standard to which nonmedical
> opinion testimony *is held*. Thus, the new regulations are not "clearly
> irreconcilable" with existing caselaw and are insufficient to overrule binding
> Ninth Circuit precedent that an ALJ must comment on lay witness testimony and
> provide germane reasons to discount it. *See Woods v. Kijakazi*, 32 F.4th 785, 790

PAGE 20 – OPINION AND ORDER

9th Cir. 2022) ("[Ninth Circuit] precedent controls unless its reasoning or theory is clearly irreconcilable with the reasoning or theory of intervening higher authority, which in this case is the agency's updated regulations."). Further, "[t]he requirement that an ALJ consider lay witness testimony comes from other regulations, regulations that remain intact after the 2017 amendment." *Joseph L. S.*, 2023 WL 5611408, at *5 (citing 20 C.F.R. §§ 416.913(a), 416.929(a)). The Ninth Circuit's requirement from the line of cases described above that an ALJ must provide germane reasons to discount lay witness testimony finds support in this regulatory requirement, which still remains. *See, e.g.*, *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("Disregard of [lay witness testimony] violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work[,] 20 C.F.R. § 404.1513(e)(2)." (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). Thus, the contention "[t]hat an ALJ can disregard or reject relevant lay evidence for no reason is inconsistent with the Commissioner's obligation to consider such evidence[] and the rule [that] the ALJ must provide some rationale in order for the [c]ourt to meaningfully determine whether the ALJ's conclusions are free of legal error and supported by substantial evidence." *Gary J.D. v. Comm'r of Soc. Sec.*, No. 22-cv-1821, 2023 WL 5346621, at *14 (W.D. Wash. Aug. 21, 2023).

*Tracy Q.*, 2024 WL 706963, at *8 (footnotes omitted).[6]

In addition to this Court and the district judge in *Tracy Q.*, several other judges from this district have concluded that the new regulations have not eliminated an ALJ's obligation to articulate their assessment of lay witness testimony. *See Liesa M-B v. Comm'r, Soc. Sec. Admin.*, No. 1:22-cv-01213-MK, 2024 WL 1007886, at *7 (D. Or. Mar. 8, 2024) ("[The Commissioner] suggests it is an 'open question' whether ALJs are still required to consider lay witness evidence under the revised regulations, . . . [but] this Court still requires ALJs to provide germane reasons for dismissing lay witness testimony."); *Tonyia P. v. Comm'r, Soc. Sec. Admin.*, No. 6:20-cv-

---

[6] The Court notes that the district court in *Joseph L.S.* "cited the regulatory provisions applicable to Title XVI claims—the same regulatory provisions applicable to Title II claims are in 20 C.F.R. §§ 404.1513, 404.1529." *Tracy Q.*, 2024 WL 706963, at *8 n.6. The Court also notes that "[t]he requirement that the Commissioner consider nonmedical evidence in adjudicating Title II claims is now in 20 C.F.R. § 404.1513(a)(4)." *Id.* at *8 n.7.

PAGE 21 – OPINION AND ORDER

00942-MO, 2024 WL 36713, at *2 (D. Or. Jan. 3, 2024) ("Under the new regulations, . . . the

ALJ must still articulate their assessment of lay witness statements." (citing *Tanya L.L. v.*

*Comm'r Soc. Sec.*, 526 F. Supp. 3d 858, 869-70 (D. Or. 2021) (Brown, J.))); *Janet M. v. Comm'r*

*Soc. Sec. Admin.*, No. 6:21-cv-00725-AR, 2023 WL 3318777, at *6 (D. Or. May 9, 2023)

(same); *Christopher K. v. Comm'r, Soc. Sec. Admin.*, 649 F. Supp. 3d 1041, 1049 (D. Or. 2023)

(Hernández, J.) (same).

### B.    Analysis

The Court finds that the ALJ was required but failed to provide germane reasons for

rejecting Plaintiff's father's lay witness testimony.

#### 1.    Lay Witness Testimony

Plaintiff's father reported, *inter alia*, that Plaintiff experienced constant pain, fatigue,

nausea, low energy, and exhaustion, and could no longer do much outside of her home. (Tr. 371.)

He provided a detailed accounting of Plaintiff's limitations (*id.* at 371-78), concluding that her

condition had deteriorated over the years and she used to be active and happy but now struggles

with "just normal day to day things[.]" (*Id.* at 378.)

#### 2.    The ALJ's Findings

The ALJ stated that he "considered" the lay witness testimony and acknowledged that lay

testimony "can be helpful in making findings regarding the claimant's ability to complete

activities of daily living[.]" (Tr. 137.) The ALJ then stated, "[h]owever, this is considered

evidence from a non-medical source" and provided no further analysis. (*Id.*)

#### 3.    Disposition

The Court adheres to its previous holding that ALJs are still required to articulate their

evaluation of lay witness testimony. *See Christopher M.*, 2023 WL 8827678, at *10 ("Under the

new regulations, . . . the ALJ must still articulate their assessment of lay witness statements.");

*see also Lance A. v. Kijakazi*, No. 6:21-cv-00723-SB, 2023 WL 2728861, at \*3 (D. Or. Mar. 31,

2023) (describing the legal standard applicable to lay witness testimony and noting that a judge

from this district held that "ALJs 'must continue to give germane reasons for discounting lay

witness testimony' and conclud[ed] that 'under the new regulations . . . an ALJ's failure to

address lay testimony is error'" (quoting *Kimberly T. v. Kijakazi*, No. 3:20-cv-01543-SI, 2022

WL 910083, at \*7 (D. Or. Mar. 29, 2022))); *Joseph B. v. O'Malley*, No. 2:23-cv-00750-SI, 2024

WL 1636525, at \*9 (D. Or. Apr. 16, 2024) ("The Commissioner argues that under new

regulations governing the evaluation of *medical* evidence, an ALJ need not provide any reason

for rejecting *lay* witness statements. This Court repeatedly has rejected this argument and still

requires ALJs to provide a germane reason to reject lay witness testimony.").

The Court further concludes that the ALJ's failure to consider the lay testimony was

harmful in light of the ALJ's failure to provide legally sufficient reasons to discount Plaintiff's

testimony where both Plaintiff and her father testified to similar limitations. *See Janet M.*, 2023

WL 3318777, at \*6 (noting that "as explained above, the ALJ did not provide legally sufficient

reasons to discount plaintiff's subjective symptom testimony" and "[t]herefore, the ALJ erred in

failing to consider the lay witness statements"); *cf. Christopher K.*, 649 F. Supp. 3d at

1050 (explaining that the lay witness' "statements are substantially similar to

Plaintiff's testimony[,]" "[t]he Court has already concluded the ALJ erred when she partially

rejected Plaintiff's testimony because the ALJ failed to provide support for her opinion based on

substantial evidence in the record[,]" and "[t]he Court also concludes on the same basis that the

ALJ erred when she rejected" the lay witness' testimony).

///

IV.    **REMEDY**

Plaintiff asks the Court to remand for further administrative proceedings or an immediate award of benefits. (Pl.'s Br. at 21; Pl.'s Reply Brief at 7-9, ECF No. 16.) The Commissioner responds that there are significant conflicts and ambiguities in the record and Plaintiff has failed to demonstrate that a finding of disability would be required if the evidence was credited as true. (Def.'s Br. at 12-13.) The Court finds that the credit-as-true standard is satisfied here and that remand for the payment of benefits is appropriate.

A.    **Applicable Law**

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). In several cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1020 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* (citations omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

///

B.      **Analysis**

The Court finds that the credit-as-true standard is satisfied here and that remand for the payment of benefits is appropriate.

The Court has concluded that the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony, Willis' medical opinion, and Plaintiff's father's testimony. The record has been fully developed, including treatment notes spanning the relevant time period, opinions from several medical sources, and Plaintiff's testimony about the severity and effects of her impairments, and further proceedings would serve no useful purpose. *See Garrison*, 759 F.3d at 1021 ("Although the Commissioner argues that further proceedings would serve the 'useful purpose' of allowing the ALJ to revisit medical opinions and testimony that she rejected for legally insufficient reasons, our precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit-as-true analysis.") (citations omitted).

Further, if Plaintiff's symptom testimony and Willis' medical opinion are credited as true, the record reflects that Plaintiff would miss two or more days of work per month due to her impairments. (*Id.* at 196, 201, 204-05, 909-12.) The VE testified that a person missing two or more days per month of work "would not be able to meet competitive employment demands[.]" (Tr. 214.) As a result of the VE's testimony, the ALJ would be required to find Plaintiff disabled on remand. *See Garrison*, 759 F.3d at 1022 n.28 (explaining that "there is no need to develop the record or convene further administrative proceedings" where "the VE answered a question describing a hypothetical person with the RFC that the claimant would possess were the relevant opinion or testimony taken as true"). Finally, the Court does not have any serious doubt as to whether Plaintiff is disabled within the meaning of the Social Security Act.

PAGE 25 – OPINION AND ORDER

For these reasons, the Court remands this case for the calculation and payment of benefits. *See Varela v. Saul*, 827 F. App'x 713, 714-15 (9th Cir. 2020) (reversing district court opinion remanding for further proceedings and instead remanding with instructions to "remand to the Commissioner of Social Security for an award of benefits" where "crediting [the treating physician's] opinion as true, there is no doubt that [the claimant] was disabled"); *Smith v. Saul*, 820 F. App'x 582, 586 (9th Cir. 2020) (reversing district court opinion affirming the denial of benefits and instead remanding "with instructions to remand to the ALJ for calculation and award of benefits" where "[t]he vocational expert concluded that an individual with [the claimant's] limitations, as described in the improperly discredited testimony . . . would be unable to perform competitive employment").

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS for the calculation and payment of benefits.

**IT IS SO ORDERED.**

DATED this 15th day of July, 2024.

HON. STACIE F. BECKERMAN
United States Magistrate Judge